IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY GLENN BURRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 11-0141-N |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner Of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

ORDER

In this action, plaintiff appeals the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits. Based on a joint consent to the jurisdiction of a magistrate judge (doc. 24) this matter has been referred (doc. 25) to the undersigned to conduct all proceedings and order the entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. Oral argument was held before the undersigned on August 23, 2012, at which time Rose McPhillips, Esq., appeared for the plaintiff and Assistant United States Attorney Patricia Beyer appeared for the Commissioner. After careful consideration of the arguments of counsel and the record, including the briefs of the parties (docs. 14, 15, 17 and 18), it is hereby ORDERED that this action be REMANDED to the Commissioner.

Procedural Background

The plaintiff filed a claim for a period of disability and for disability insurance benefits, and protectively filed a claim for supplemental security income on January 22, 2008. Following denial of his claims, plaintiff sought and received a hearing before an administrative law judge ("ALJ"); the hearing was held on August 26, 2009. On December 18, 2009, the ALJ issued a

decision finding that plaintiff was not disabled and denying benefits.  The Appeals Council denied review on January 28, 2010, and plaintiff timely filed the instant appeal.

## Scope of Judicial Review

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp. 478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir. 1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). 'Substantial evidence' means more than a scintilla, but less than a preponderance.  In other words, 'substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the

contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999.

Statutory and Regulatory Framework

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. See 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n .1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

>(1) Is the person presently unemployed?
>
>(2) Is the person's impairment(s) severe?
>
>(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[1]
>
>(4) Is the person unable to perform his or her former occupation?
>
>(5) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. Id.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). Id. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. Id. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available

---

[1] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

in the national economy the claimant can perform. Id. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"), or hear testimony from a vocational expert ("VE"). Id. at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." Id.

## Issues

Plaintiff argues that the ALJ erred (a) by using "the grids" to deny plaintiff's claim without the testimony of a vocational expert; and (b) by failing, in finding that plaintiff could perform medium work, to address the remaining limitations following surgery on both of plaintiff's feet to treat his plantar fibromatosis.

## Facts

Plaintiff was born in 1960; he was thus 46 years of age when he allegedly became disabled and 49 at the time of the hearing, placing him in the "younger individual" category. His past relevant work consisted of employment as a construction laborer, categorized as "heavy" work, which includes the frequent lifting of 50 pounds and occasionally up to 100 pounds. As noted below, the ALJ determined that plaintiff could no longer perform his past relevant work.

In seeking benefits, plaintiff alleged that he became disabled as of August 15, 2006, due

to back and foot pain [from plantar fibromatosis[2] and two surgeries for that condition]. He also alleged, at various times during the administrative process, that he suffered from arthritis in his right knee which caused pain and swelling, urinary incontinence and vision problems. The ALJ found that plaintiff suffered from the following severe impairments: status post bilateral plantarfascectomy and chronic low back pain.[3] The ALJ held that the evidence did not support a finding that plaintiff suffered a visual impairment, and alternatively found that any such impairment was not severe.[4] The ALJ did not make an express determination at the third step whether the plaintiff's alleged urinary incontinence and arthritis-related knee pain were severe impairments.

In February of 2008, plaintiff was seen at the Diagnostic and Medical Clinic in Mobile, Alabama, for disability determination. The examiner, Dr. Keith Varden, noted mild pain in plaintiff's back[5], and "callouses" on the arches plaintiff's feet that caused him pain. Plaintiff told Dr. Varden and testified at the hearing that he was struck in the back by some bricks while working and that he had suffered back pain since that time. Plaintiff also informed another

---

[2] Plantar Fibromatosis refers to having non-cancerous fibroid growths or tumors affecting the connective tissue on the underside of the bones of the foot. 2, 4 J. E. Schmidt, M.D., Attorneys' Dictionary of Medicine (Matthew Bender).

[3] The ALJ noted that "there is virtually no objective medical evidence of the claimant's alleged back pain" but, in light of the combination with the plaintiff's foot problems, gave plaintiff "the benefit of the doubt" concerning the back pain.

[4] The ALJ noted the report of an examination that showed plaintiff had uncorrected 20/20 vision in both eyes.

[5] The ALJ quoted those findings in his decision. "[M]ild paravertebral tenderness, but has full range of motion including flexion and extension, sideways bend and rotation with no specific limitations. He does have some pain with rotation and sideways bending, but he is able to move fully through the motions." Doc. 13 at 23.

consultive examiner, Thomasina Sharpe, M.D., that the only treatment he had received for his back pain was muscle relaxers.

Thereafter, plaintiff was diagnosed and treated for plantar fibromatosis at the Veteran's Administration Medical Center in Biloxi. Doc. 13 at 191-194, 199-215, 231-240. He underwent surgery for that condition on his left foot in November 2008 and on his right foot in July 2009, shortly before the hearing, and approximately three months before the consultive examination by Dr. Sharpe.

## Analysis

### Reliance on Grid

Plaintiff's first argument is that the ALJ erred by relying on the Grid, rather than questioning a vocational expert. The ALJ decided the case at step 5 of the sequential evaluation on the basis of "The Grid."[6] This determination was made without a Vocational Expert, which is only allowable if there are no non-exertional impairments. The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's non-exertional impairments are so severe as to prevent a full range of employment at the

---

[6] Despite plaintiff's prior work being unskilled, the ALJ utilized Grid Rule 203.93, which refers to someone whose past relevant work was skilled or semi-skilled but the skills are not transferable. The court ordered supplemental briefing concerning the use of the wrong Grid Rule. *See* docs. 16, 17, 18. The court is satisfied that, where there exists another Grid Rule applicable to plaintiff's position which would support the same determination as was made using the wrong rule, harmless error analysis applies. *See* doc. 18, *quoting* Caldwell v. Barnhart, 261 F. Appx 188, 190 (10th Cir. 2008)(*citing* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."). Because application of 20 C.F.R. Part 404, subpt. P, app. 2, § 203.28, applies to a younger individual with at least a high school education, who is limited to medium work, and whose past relevant work was unskilled, and would similarly support a finding that such a person was not disabled, the court finds the error to be harmless.
.

designated level." Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) *quoting* Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). "It is only when the claimant can clearly do unlimited types of [ ] work ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.)

Pain is such a non-exertional impairment. Falcon v. Heckler, 732 F.2d 827 (11th Cir. 1984); Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995). Plaintiff argues that the ALJ was precluded from utilizing the Grid because of his pain. It is uncontested that plaintiff suffered pain from the condition affecting his feet and the surgeries to treat it, and the ALJ found that plaintiff suffered a severe impairment from his back, the chief complaint from which was pain. In addition, plaintiff claimed pain resulting from arthritis in his knee, as well; the ALJ did not make a finding on the severity of that condition.

While the ALJ discounted plaintiff's subjective claims that his pain was at the level claimed, that it was disabling by itself, and that it was so severe as far back as plaintiff's alleged onset date,[7] the ALJ has not found that the pain did not exist at all nor that it did not constitute an impairment. At the hearing, the Commissioner argued, in sum, that the ALJ determined that the plaintiff's pain from the surgeries did not last 12 months, that the two surgeries should be considered separate impairments and that neither one of them resulted in limitations greater than

---

[7] "The pain standard requires (1) evidence of an underlyiung medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

12 months, and thus the pain was not a limitation which must be considered in determining whether or not the ALJ could use the grids.

Plaintiff's counsel argued that the plaintiff suffered from a single condition, plantar fibromatosis, and that the two treatments for that condition can not be deemed to be separate events which just happen to overlap. The court holds that plaintiff's foot pain, caused by the underlying condition and the two surgeries, constituted a single impairment. *See* Brazzell v. Astrue, 2009 WL 5217361, *4 (W.D.Ky. Dec. 20, 2009) (knee surgery and neck problems related, together reach duration requirement for closed period claim).[8]  Further, as noted by plaintiff's counsel at the hearing, the ALJ expressly determined that plaintiff's foot pain due to the surgeries constituted a "severe" impairment; the definition of 'severe' impairment includes a condition that the limitation be one which has lasted or is expected to last at least 12 months, and thus that the ALJ implicitly ruled that the foot pain had or likely would last that long.  *See*

---

[8] Generally, "two separate disability causes ordinarily cannot be tacked to equal 12 months." Ratto v. Secretary, 839 F.Supp. 1415, 1427 (D.Or.1993) (*citing* 20 CFR 404.1522(a)); *but see* Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996) (refusing to resolve the question of whether a plaintiff can tack unrelated impairments in order to meet the duration requirement, but noting that Social Security Ruling 82–52 allows tacking for re-entitlement purposes) However, "a different rule applies where the first disability is related to the second. Where an emerging mental impairment overlaps in time with a triggering but diminishing physical impairment, the combined effect of the impairments should be considered to the extent it might bear on the onset date of disability." Id (*citing* Lichter v. Bowen, 814 F.2d 430, 436 (7th Cir.1987)). Moreover, "even if the two conditions are unrelated, the impairments may combine to created [sic] a continuous period of disability so long as the duration of each impairment, taken separately, lasted or was expected to last 12 months, and the initial onset of disability was before the insured status date." Id.

Romero v. Astrue, 2009 WL 4693914 *9 (D.Ariz. Dec. 24, 2009).

Samuels v. Comm'r of Social Sec., 2010 WL 5598323 *3 (M.D.Fla. December 28, 2010)(*citing* 20 C.F.R. §404.1521 *et seq.*).[9]

The ALJ did discuss the plaintiff's surgeries and his recovery from those surgeries[10], and the Commissioner's brief includes an argument that plaintiff's condition was not disabling because it could "reasonably be remedied by surgery, treatment or medication." Doc. 15 at 6. Despite these references, and in light of the matters addressed above, the court does not read the ALJ's decision as relying on the length of plaintiff's recovery from surgery as the basis for his reliance on the Grids. Indeed, it does not appear that the ALJ addressed the existence of nonexertional impairments or whether this was a proper case for use of the Grids.

In addition, while the failure of the ALJ to expressly determine whether two of plaintiff's impairments—urinary incontinence and arthritis-related knee pain—were severe is allowable where the decision reflects that the determination was made implicitly, Kemp v. Astrue, 2009 WL 163019 at *3 (11th Cir., January 26, 2009)(unpublished), the ALJ does not appear to have addressed plaintiff's claim of knee pain. This failure also complicates the issues presented by the

---

[9] Plaintiff's counsel also challenged the assumption that plaintiff had no limitation due to pain as a result of the tumors on his feet, noting that such symptoms necessarily would have been a prerequisite to two such serious surgeries. In light of the nature of the condition, this argument has a degree of apparent reasonableness, but the court need not reach a determination on this issue in light of the matters addressed above.

[10] Plaintiff points out that the ALJ assumed facts not in evidence and reached a conclusion about plaintiff's recovery from the second surgery which was not supported by substantial evidence when he declared that there was no reason to believe that plaintiff had any complications that would have extended his pain and recovery beyond the three months the ALJ found that it took to recover from his first surgery. Doc. 14 at 6-9. Plaintiff also notes the existence of evidence both that plaintiff continued to have problems from his first surgery beyond the three month period and that plaintiff did in fact suffer medical complications—a hematoma—from his second surgery that extended his recovery and his surgery-related pain beyond a period of one year. On remand, the ALJ should consider the evidence that plaintiff suffered pain for a period in excess of one year not only from the surgeries themselves but from the tumors.

failure to call a vocational expert. To the extent, if any, that the ALJ's decision to rely on the Grids rather than on testimony from a vocational expert was based on the plaintiff's lack of nonexertional limitations, the failure to address plaintiff's complaints of pain from the arthritis in his knee would undermine such a conclusion based solely on plaintiff's back and foot conditions.

For the reasons set forth above, the record before the court does not support the ALJ's decision to utilize the Grids at step 5 rather than seek testimony from a vocational expert. On that basis, remand is appropriate. On remand, the ALJ should either obtain a VE or should clearly state the basis for holding that reliance on the Grids is appropriate in this case.[11]

## Conclusion

Accordingly, it is hereby ORDERED that this action shall be REMANDED to the Commissioner for further proceedings consistent with this opinion, and that judgment shall be entered for the plaintiff.

DONE this the 31st day of August, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[11] In light of the determination that remand is appropriate, the court does not reach a decision on the plaintiff's second assignment of error, concerning the failure to address residual limitations from the plaintiff's plantar fibromatosis following the surgeries, as addressed above. The plaintiff has challenged the ALJ's assumptions concerning the plaintiff's subsequent recovery.